JAN 30 2004

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

2004 MAR -1 P 5:13

US DISTRICT COURT
BRIDGEPORT CT

ERIC ATKINSON
#214214
PLAINTIFF

v

KEVIN SCHIBI, ET. AL.
DEFENDANT

PRISONER
CIVIL NO. 3:01CV1971

JANUARY 23RD, 2004

## Declaration In Support Of Motion For Summary Judgement.

I, ERIC ATKINSON #214214 DECLARES UNDER THE PENALTY OF PERJURY:

1. I AM THE PRO-SE PLAINTIFF IN THE ABOVE CAPTIONED MATTER. THE REMAINING CLAIMS THE COMPLAINT ALLEGES THAT I WAS SUBJECTED TO AN "EXCESSIVE MISUSE AMOUNT OF FORCE" BY PRISON OFFICIALS. THIS DECLARATION IS IN SUPPORT OF MY MOTION FOR SUMMARY JUDGEMENT.

2. I AM AN INMATE AT NORTHERN CORRECTIONAL INST. ON NOVEMBER 3RD, 2000 I WAS BITTEN BY K-9 REX, MACED AND BEATEN BY PRISON OFFICIALS, AS SET FORTH IN MY AMENDED COMPLAINT PARAGRAPH 18 THROUGH 25.

3. I WAS HOUSED IN A SINGLE CELL AND HELD MY FOOD SLOT TRAP DEMANDING A CELL MOVE. DEF'S. FANEUFF AND OGLESBY BECAME VISIBLY UPSET AND PERCEIVED MY ACTIONS AS AN ATTEMPT TO DICTATE AUTHORITY.

4. I POSSESSED "NO" WEAPON AND "DID NOT" THREATEN AND/OR ASSAULT ANYONE,

IN FACT RECEIVED DISCIPLINARY REPORTS FOR INTERFERRING WITH SAFETY AND SECURITY (NCI 0011018) AND DISOBEYING A DIRECT ORDER IN ACCORDANCE WITH THE DEPT'S. ADM. DIR 9.5 CODE OF PENAL DISCIPLINE TO ADDRESS ALLEGED ACTS OF MISCONDUCT BY PRISONERS. DISCIPLINARY REPORTS AND ADM. DIR. 9.5 ARE ATTACHED AS EXHIBITS 2, 3 AND 4 RESPECTIVELY.

5. AS A RESULT OF THE NOVEMBER 3RD. INCIDENT I RECEIVED NUMEROUS BRUISES, ABRASIONS AND LACERATIONS THAT REQUIRED 11 SUTURES, DONE WHILE I WAS 4 PT. RESTRAINED. APRN SANDRA KATZ-FIENBERG MEDICAL INCIDENT REPORT IS ATTACHED AS EXHIBIT 1.

6. THE DEFENDANTS CONTEND I TOOK AN AGGRESSIVE COMBATIVE STANCE TOWARDS STAFF AND REFUSED ALL ORDERS TO "GET DOWN OFF DESK", BUT THE ENTIR PENOLOGICAL OBJECTIVE WAS TO "SECURE THE FOOD SLOT TRAP". THE DESK IS LOCATED AT THE BACK OF CELL. PRISON OFFICIALS OFFICIAL REPORTS ARE ATTACHED AS EXHIBIT 5 AND 6. ALSO SEE EXHIBIT 3

7. DEFENDANT SCHIBI IN EXHIBIT 6 CONTEND I KICKED AT K-9 REX (THAT IS PROVOKED/ANTAGONIZED), BUT THE OFFICIAL K-9 BITE REPORT STATES THE BITE WAS "ON COMMAND" (SICCED), NOT PROVOKED, UNPROVOKED OR ACCIDENTAL. CANINE BITE REPORT IS ATTACHED AS EXHIBIT 7.

8. I WAS BEATEN, MACED AND BITTEN W/OUT PROVOCATION, WAS NOT AN IMMEDIATE THREAT TO STAFF, SELF OR PROPERTY AND THE "EXCESSIVE MISUSE OF FORCE" WAS CONTRADICTORILY TO THE DEPT'S. ADM. DIR. 6.5 USE OF FORCE.

Adm. Dir. 6.5 Use of Force is attached as Exhibit 8.

9. For the reasons stated in the brief and undisputed facts submitted with this motion establish the defendants' "excessive misuse of force" violated my 8th. Amendment of the U.S. Constitution. Accordingly, I am entitled to summary judgement on my excessive use of force claim.

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Respectfully Submitted.

Eric Atkinson #214214
Northern Correctional Inst.
287 Bilton Rd.
P.O. Box 665
Somers, Ct. 06071-0665

# CERTIFICATION.

I, HEREBY CERTIFY THAT A COPY OF THE FOREGOING WAS MAILED U.S. MAIL ON MONDAY, JANUARY 26TH, 2004 TO:
ASST. ATTY. GENERAL LYNN D. WITTENBRINK
   110 SHERMAN ST.
HTFD., CT. 06106

Eric Atkins
PRO SE PLAINTIFF.
NORTHERN CORRECTIONAL INST.
287 BILTON RD.
P.O. BOX 665
SOMERS, CT. 06071-0665.

EXHIBIT 8

A.D. 6.5, Use of Force - REVISED - 2/28/03
Prepared for signature 3/3/03 - effective 3/5/03
REVISION MADE ON PAGE 7 - 3/21/03



1.    <u>Policy</u>.  Use of physical force shall be authorized only when reasonably necessary to protect any person, prevent escape, prevent damage to property, or maintain order and discipline.  The level of physical force shall be minimal, incremental and appropriate to the immediate circumstances.

2.    <u>Authority and Reference</u>.

    A.    Connecticut General Statutes Sections 18-81, 53a-3(5), 53a-18, 53a-19, 53a-20, 53a-21 and 53a-22.

    B.    American Correctional Association, Standards for Adult Probation and Parole Field Services, Second Edition, March 1981, Standards 2-3158 and 2-3159.

    C.    American Correctional Association, Standards for Adult Correctional Institutions, Third Edition, January 1990, Standards 3-4087, 3-4183, 3-4194, 3-4196, 3-4198 and 3-4268.

    D.    American Correctional Association, Standards for Adult Local Detention Facilities, Third Edition, March 1991, Standards 3-ALDF-1D-17, 3-ALDF-3A-17, 3-ALDF-3A-28, 3-ALDF-3A-29, 3-ALDF-3A-31, and 3-ALDF-3E-08.

    E.    American Correctional Association, Standards for Adult Local Detention Facilities, January 1995, Standard 3-4183-1.

    F.    National Commission on Correctional Health Care, Standards for Health Services in Prisons, 1999, Standard P-66.

    G.    Administrative Directives 2.7, Training and Staff Development; 6.4, Transportation and Community Supervision of Inmates; 6.6, Reporting of Incidents; 6.9, Control of Contraband and Physical Evidence; 6.11, Canine Unit; 7.2, Armories; 7.4, Emergency Response Units; 8.5, Mental Health Services; 8.6, Credentials of Health Services Staff; and 9.4, Restrictive Status.

3.    <u>Definitions</u>.  For the purposes stated herein, the following definitions apply:

    A.    <u>Chemical Agent Devices</u>.  Chemical agent devices consist of two (2) categories: (1) Category I devices are hand held aerosol dispensers and (2) Category II devices consist of all methods of administration other than hand held aerosol devices.

    B.    <u>Deadly Physical Force</u>.  Force which can reasonably be expected to cause death or serious physical injury.

    C.    <u>Force</u>.  Physical contact or contact through use of an armory item or a canine initiated by a staff member to establish control or restore order.

    D.    <u>Full Stationary Restraint</u>.  Securing an inmate by the four (4) points of the arms and legs to a stationary surface.

E.   <u>In-Cell Restraint</u>.  Restraint within a cell of an acutely disruptive inmate utilizing one or more of the following restraining devices as appropriate: soft restraints, handcuffs, leg irons, belly chains, flex cuffs and/or black box.

F.   <u>Lethal Ammunition</u>.  Ammunition that when used may reasonably be expected to cause death or serious physical injury.

G.   <u>Non-Deadly Physical Force</u>.  Physical force upon another person, not intended nor reasonably expected to cause death or serious physical injury.

H.   <u>Non-Lethal Ammunition</u>.  Ammunition, to include Category II chemical agent projectiles, not reasonably expected to cause death or serious physical injury.

I.   <u>Restraints</u>. Restraints shall include any mechanical device used to control the movement of an inmate's body and/or limbs, including but not limited to flex cuffs, soft restraints, hard metal handcuffs, a black box, Chubb cuffs, leg irons, belly chains, a tether chain or a convex shield.

J.   <u>Therapeutic Restraints</u>.  Full stationary restraints that are authorized by a physician as part of a medical or mental health treatment.

4.   <u>General Principles</u>.

A.   Confrontation may be deferred when such physical force is likely to result in escalation of the incident.

B.   Whenever possible, when there is no immediate threat to the inmate, others or the safety, order, discipline and/or security of the facility, and the inmate is isolated, voluntary cooperation, control and compliance shall be attempted by verbal intervention, defusing tension, warning, reprimand, direct order, disciplinary action.

A custody supervisor and a health services staff member shall confer and gather pertinent information about the inmate and the immediate situation prior to the use of force, whenever possible.

However, staff may immediately use force and/or apply restraints when an inmate's behavior constitutes an immediate threat to self, others, property or to the safety and security of the institution.

C.   Physical force shall only be used to the degree and duration necessary to achieve its authorized objective.

D.   Physical force shall not be used for the harassment or punishment of any person.

E.   A planned use of physical force should be carried out by personnel in hazardous duty classifications.  Use of physical force by other personnel shall be used in accordance with Section 19 of this Directive.

F.   An employee who is issued an armory item shall be authorized to use the item subject to the chain of command and in accordance with this Directive.

G.   Prior to the use of deadly physical force a verbal warning shall be given where feasible.

H.    An authorized Universal Precaution Safety Veil may be used in accordance with Section 10, if there is an immediate threat of spitting by an inmate or a reasonable belief that spitting may recur. Except for the use of the Universal Precaution Safety Veil, the placement of objects in proximity to the inmate's airway is prohibited. This will not preclude the use of a plastic convex shield in the interim of the use of the Universal Precaution Safety Veil. No other object or device for this purpose is authorized.

I.    Each person involved in a use of force shall be attentive to and conscious of changes in inmate behavior or demeanor that might indicate physical distress or any other physical side effect related to the use of force (e.g., trouble breathing, unresponsive).

J.    A supervisor shall limit those staff involved in the use of force to those who are necessary to control and contain the incident.

K.    A Supervisor shall direct the actions of responding staff and continually assess the well-being of both staff and inmates.

L.    The Supervisor in charge shall not normally become directly involved in physically restraining an inmate. Should the supervisor be involved in a use of force, the supervisor shall disengage while supervising the incident.

5.    Use of Non-Deadly Physical Force.

A.    Protection of Persons.  Non-deadly physical force may be used to protect a person from an immediate physical threat.

B.    Prevention of Escapes.  Non-deadly physical force may be used to prevent an inmate from escaping from custody.

C.    Prevention of Property Damage.  Non-deadly physical force may be used to prevent destruction of property.

D.    Maintaining Order and Discipline.  Non-deadly physical force may be used to enforce an order only when failure to comply with the order jeopardizes the safety of an individual or seriously threatens the security and control of the area.  Such force shall be authorized and observed by a supervisor whenever possible.

6.    Use of Deadly Physical Force.  Deadly physical force shall be authorized for use only in accordance with this Section.

A.    Protection of Persons.  Deadly physical force may be used to defend oneself or another person from the use or imminent use of deadly physical force.

B.    Prevention of Escapes. Deadly physical force may be used to prevent the escape from custody of a person whom an employee reasonably believes has committed a felony which involved the infliction or threatened infliction of serious physical injury.

1.    Deadly force may be used if the inmate who is attempting to escape from custody has committed, is reasonably believed to have committed, or has attempted to commit a felony which involved the infliction or threatened infliction of serious physical injury and if, where feasible, you have given warning of your intent to use deadly physical force.  The

inmate's criminal record of convictions and institutional disciplinary behavior may be relevant and may be considered in making this determination.

2.  In the event firing a weapon is likely to endanger any by-stander during an escape, staff shall not discharge the weapon even if it allows the escape attempt to be successful.  Prior to the use of deadly force, a verbal warning shall be given if at all possible.  Warning shots shall not be authorized.

3.  In no case may the use of deadly physical force be justified solely on the grounds:

   a.  that without the use of such force, the inmate's escape cannot be prevented; or

   b.  of the security classification of the institution from which the escape is attempted.

7.  <u>Chemical Agents</u>.

   A.  <u>Category I Chemical Agents</u>.  A properly trained and currently certified custody supervisor, designated Community Services staff member, designated Security Division staff member and Central Transportation staff member may be authorized to routinely carry and use as appropriate a Category I chemical agent. Oleoresin Capsicum (OC) shall be authorized for use as appropriate during transportation in accordance with this Directive. A custody supervisor may authorize the issuance and use as appropriate of Category I chemical agents to trained and certified staff in accordance with this Directive. Upon the direction of a supervisor, a tactical operations team member shall be authorized to carry and use Category I chemical agents in accordance with this Directive.

   B.  <u>Category II Chemical Agents</u>.  Specially trained and designated staff may use Category II chemical agents on the authorization of the highest ranking onsite facility supervisor and subject to the direct supervision of a custody supervisor in accordance with this Directive.

   C.  <u>Decision Factors</u>.  The decision to utilize chemical agents should consider among other factors: (1) immediate danger posed by the inmate (e.g., active aggression, presence of weapons, known history of assaultive behavior); (2) potential injury to staff and/or inmate; (3) area where agent shall be employed; (4) potential exposure or impact on uninvolved persons; or (5) presence of a physical condition, medical or apparent psychiatric concern, known to staff utilizing the chemical agent which may contraindicate use, (e.g., heart or respiratory condition, catatonic state, panic disorder or irregular breathing). Prior to the use of a chemical agent, Health Services staff shall be consulted whenever possible.

D.    <u>Decontamination</u>.  Decontamination of any exposed person and the contaminated area shall be accomplished immediately upon restoration of control. Personal decontamination shall include at a minimum: (1) flushing of the eyes; (2) a shower and change of clothing; (3) medical attention; and (4) removal of the person from the affected area if possible.

8.    <u>Restraints</u>.

A.    <u>Authorized Use</u>.  Restraints as a use of physical force may be authorized: (1) to prevent escape; (2) to prevent injury to others or self; (3) to prevent property damage; and (4) to ensure compliance with an order.  An inmate placed in restraints for a period longer than one (1) hour shall be placed on restrictive status in accordance with Administrative Directive 9.4, Restrictive Status. Use of restraints in accordance with Administrative Directives 6.4, Transportation and Community Supervision of Inmates, 9.4, Restrictive Status, or for routine movement shall not be considered a use of physical force under this Directive.

B.    <u>In-Cell Restraints</u>. The placement of an inmate on in-cell restraint status and the type of restraint used shall be approved by the Shift Supervisor and reviewed by the Unit Administrator or higher authority within five (5) hours of placement. Facts and circumstances leading to the use of in-cell restraints shall be documented on CN 6503, Restraint Checklist, and in accordance with Section 17 of this Directive. Placement shall also require completion of an incident report in accordance with Administrative Directive, 6.6, Reporting of Incidents.  Staff shall observe the inmate, at a minimum, every 15 minutes or continuously if required by Health Services. The shift supervisor shall observe inmates on this status at least twice per shift.  Health Services staff shall observe the inmate at least twice in a 24 hour period and conduct a mental health assessment. The Unit Administrator shall review the restraint status every 24 hours. Should an inmate's continued non-compliant behavior result in the need for continued placement on in-cell restraints beyond 72 hours, the Unit Administrator shall determine authorization for continued placement. In addition, inmates who are on in-cell restraint status that fail to regain their composure, present a continuing threat to staff, self or others may be upgraded to full stationary restraint status. This shall require authorization at the next level in the chain of command.

C.    <u>Full Stationary Restraints</u>.  Use of full stationary restraints for any purpose other than medical shall be in accordance with this Section and documented on CN 6503, Restraint Checklist and in accordance with Section 17 of this Directive. Placement of an inmate in full stationary restraints on a restrictive housing status shall be authorized by the shift supervisor with the notification of the Unit Administrator within one (1) hour of placement.  The Shift Supervisor shall review for release from restraints every two (2) hours.  Staff shall observe the inmate, at a minimum, of every 15 minutes or continuously if required by Health Services. The Unit Administrator shall review the inmate's status every eight (8) hours and shall notify the appropriate Lead Warden if the restraint status continues beyond 24 hours.

1.   <u>Criteria</u>. A shift supervisor may utilize full stationary restraints only when it is necessary to protect the inmate from self-injury, an immediate threat of assault to staff or inmate, or prevent damage to the cell, in accordance with Administrative Directive 9.4, Restrictive Status.

2.   <u>Equipment</u>. Normally, full stationary restraints shall be soft, wide and flexible. However, when a shift supervisor reasonably believes that an inmate may compromise a soft restraint device based on the inmate's history of compromising such devices, metal mechanical restraints may be used. The continued use of metal restraints for this purpose shall be with notification and subsequent authorization of the Unit Administrator, and shall require a supplemental incident report, in accordance with Administrative Directive 6.6, Reporting of Incidents.

3.   <u>Cell Condition</u>. Wherever possible, the surface that the inmate is restrained to shall be placed in the middle of the room away from the walls to prevent injury of staff and inmates during placement. The cell shall also be free of obstruction to allow for clear observation of the inmate.

4.   <u>Procedure</u>. This process shall be video recorded in accordance with Section 16 of this Directive. A video recording shall be designated to each inmate while on full stationary restraint status and the video recording shall be utilized at least during placement, each (2) hour check, during any notable change in behavior and removal of restraints.

This procedure shall be implemented in collaboration with medical staff. The inmate shall be placed on a mattress that is positioned on top of a bed frame and the inmate shall be positioned face up. Arms and legs shall be restrained such that discomfort to the inmate is minimized.

A post incident medical evaluation shall be conducted upon placement and at the indicated intervals: (a) circulation - every 15 minutes; (b) respiration - every 15 minutes; (c) pulse - every 30 minutes; (d) blood pressure - every 60 minutes; and (e) temperature - every 120 minutes.

These checks shall be executed and documented by Health Services staff in the inmate health record. At least every two (2) hours the restraints must be totally removed or serially removed and each limb of the inmate moved to full range of motion and assessed for trauma, blood circulation, and/or diminished nerve sensation.

The inmate shall be offered and allowed to attend to bodily functions at a minimum, every two hours. Restrained inmates shall receive normally scheduled meals. Meals shall be bite-sized and served on paper plates, unless a physician has ordered alternate dietary arrangements. If feasible, the inmate may have one (1) arm released to use for feeding. Fluids shall be offered every two (2) hours. Food and fluid intake/output and refusal shall be documented. Immediate removal of restraints shall be initiated where a

decompensating physical condition of a restrained inmate contraindicates restraints.  In such circumstances, the physician shall be notified immediately.

An inmate shall be left in appropriate clothing and shall not be left unclothed.

Normally, four (4) point restraints shall be soft, wide and flexible.  However, in the event that an inmate compromises the soft restraints, metal mechanical restraints may be used. The use of metal restraints for full stationary restraint shall be with the permission of the Unit Administrator, and shall require a supplemental incident report, in accordance with Administrative Directive 6.6, Reporting of Incidents.

Any devise used for full stationary restraint of an inmate shall require prior written authorization from the Commissioner or designee.

D.    <u>Restricted Use</u>.  Any restraint device or restraint technique not specifically enumerated in this Directive shall not be authorized.

9.    <u>Therapeutic Restraints</u>.  Restraints shall be used only in situations that are directly proportionate to the presence of imminent physical danger to the inmate, others or the environment.

A.    <u>No On-Site Health Services Staff</u>.  Placement of an inmate in full stationary restraints shall be in accordance with this Directive. Soft restraints shall be used.  The placement shall require an order from the on-call psychiatrist or physician within one (1) hour.

B.    <u>On-Site Health Services Staff</u>.

1.    <u>Criteria</u>. An order to restrain shall be subsequent to an evaluation by a physician.  If a physician is not on-site, an assessment shall be made by a Registered Nurse with a telephone order obtained within one (1) hour from a physician and so documented. The physician may discontinue restraints subsequent to a direct evaluation.  In the absence of a physician, a Registered Nurse may discontinue restraints with a telephone order from a physician.

2.    <u>Equipment</u>. Restraint equipment shall be approved by the Director of Health, Mental Health and Addiction Services and shall be maintained in accordance with Administrative Directive 7.2, Armories.

3.    <u>Cell Condition</u>. Wherever possible, the authorized restraint bed shall be placed in the middle of the room away from the walls to prevent injury of staff and inmates during placement. The cell shall also be free of obstruction to allow for clear observation of the inmate.

4.    <u>Procedure</u>. This process shall be video recorded in accordance with Section 16 of this Directive.  A video recording shall be designated to each inmate while on full restraint status and the video recording shall be utilized at least during placement, each (2) hour check, during any notable change in behavior and removal of restraints.

This procedure shall be implemented in collaboration with supervising custody staff. The inmate shall be placed on a mattress, which is positioned on top of a bed frame and the inmate shall be positioned face up. Arms and legs shall be restrained such that discomfort to the inmate is minimized.

A post incident medical evaluation shall be conducted upon placement and at the indicated intervals: (a) circulation - every 15 minutes; (b) respiration - every 15 minutes; (c) pulse - every 30 minutes; (d) blood pressure - every 60 minutes; and (e) temperature - every 120 minutes.

These checks shall be executed and documented by Health Services staff in the inmate health record. At least every two (2) hours the restraints must be totally removed or serially removed and each limb of the inmate moved to full range of motion and assessed for trauma, blood circulation, and/or diminished nerve sensation.

The inmate shall be allowed to attend to bodily functions every two hours. Restrained inmates shall receive normally scheduled meals. Meals shall be bite-sized and served on paper plates, unless a physician has ordered alternate dietary arrangements. If feasible, the inmate may have one (1) arm released to use for feeding. Fluids shall be offered every two (2) hours. Food and fluid intake/output and refusal shall be documented. Immediate removal of restraints shall be initiated where a decompensating physical condition of a restrained inmate contraindicates restraints. In such circumstances, the physician shall be notified immediately.

10.   <u>Universal Precaution Safety Veil</u>. A Shift Supervisor may authorize Universal Precaution Safety Veil placement when an inmate has: (1) demonstrated an immediate threat to staff safety by spitting on or at staff or others; or, (2) a history of threatening or engaging in spitting.

Placement shall only be authorized for the duration of the threat and shall require notification of the Unit Administrator, medical staff and the Deputy Commissioner of Operations. No inmate shall be left in full stationary restraints when wearing a Universal Precaution Safety Veil. Use of the safety veil shall require an incident report in accordance with Administrative Directive 6.6, Reporting of Incidents.

11.   <u>Training</u>. Custody staff training shall be in accordance with Administrative Directive 2.7, Training and Staff Development and 9.4, Restrictive Status. Health Services staff training shall be in accordance with Administrative Directives 2.7, Training and Staff Development, 8.5, Mental Health Services and 8.6, Credentials of Health Service staff.

12. <u>Firearms</u>.  Use of firearms with lethal ammunition may be used as authorized in accordance with Section 6.  Use of firearms with non-lethal ammunition may be used in accordance with Sections 5. Warning shots shall not be authorized. A firearm shall not be used if discharging it could reasonably be expected to endanger the life of any innocent bystander.

13. <u>Baton</u>.  A PR-24 or an expandable control device may only be used by a current, trained tactical operations team member and community enforcement officer as directed by the Deputy Commissioner of Field and Security Operations and shall be in accordance with Sections 5 and 6 of the Directive.

14. <u>Shield</u>.  A shield may be authorized by a shift supervisor in accordance with Section 5.

15. <u>Medical Examination</u>.  A post incident medical evaluation and treatment shall be provided as soon as possible after the use of physical force and as appropriate.

16. <u>Video Recording</u>.  A planned use of physical force within an institution shall be video recorded by a trained operator.  The camera operator shall state identity of the operator, date, time and location of the recording. The camera shall be continuously operated and focus on the central point of action avoiding any obstruction of view.  Any break in the video recording of the incident shall require reintroduction of the recorder, date, time, location, and reason for and duration of the break in recording.  Any movement within the facility of the inmate in conjunction with and directly related to the use of force incident shall also be video recorded.

The video recording shall be properly labeled to include the institution, location, date, time, subject of the recording, and identity of the operator. The original tape shall be properly secured and maintained for a minimum of two years.  The original recording shall be considered physical evidence in accordance with Administrative Directive 6.9, Control of Contraband and Physical Evidence.  Any movement, relocation or disposal of the original recording shall be authorized only by the Unit Administrator.  The original recording shall be numbered as #1 and copies shall be sequentially numbered.  All recordings shall be properly accounted for.

17. <u>Reporting and Record Keeping</u>.  Whenever physical force is used a Use of Force Report CN 6501, shall be completed by each employee involved in or observing the use of force incident. This requirement shall not apply to the routine use of restraints which is not considered a use of physical force. In addition to a Use of Force Report, CN 6501, a Use of Chemical Agents Report CN 6502, shall be completed for any circumstance where chemical agent is deployed.  These reports shall be attached to the Incident Report and submitted as required in Administrative Directive 6.6, Reporting of Incidents.

18.  <u>Serious Incident Review</u>.  A Serious Incident Review shall be used to assess the appropriateness of a use of physical force in an incident.

    A.  <u>Circumstances</u>.  A Serious Incident Review shall be conducted whenever: (1) a firearm is discharged; (2) Category II chemical agents are used; and/or (3) a firearm is drawn in a community setting except by staff of the Tactical Operations, Security Division or Community Enforcement Units, in the performance of their duties and in accordance with required training, while assisting outside law enforcement with an inmate apprehension.

    B.  <u>Review Committee</u>.  A Serious Incident Review Committee shall be appointed within five (5) business days of the incident by the appropriate Deputy Commissioner/designee whose unit was involved in the incident.  The committee shall consist of three (3) persons of managerial rank.  The Chair shall be of the rank of Captain, Correctional Counselor Supervisor or above.  No member of the review committee shall be from the unit where the incident took place.

    C.  <u>Committee Activities and Report</u>.  The committee shall review and analyze all reports, examine any physical evidence and may interview any witnesses or participants.  The committee shall issue a report describing: (1) whether the action taken was consistent with Department directives; (2) whether other, less severe means of physical force were available to resolve or prevent the incident; (3) what action should be taken to avoid such future incidents; and (4) any recommended changes in Department or unit directives.  The committee's final report shall be prepared within 30 days of the incident.

    D.  <u>Report Review</u>.  Within five (5) business days, the Deputy Commissioner of Operations shall submit a report and supporting documentation with comments and action taken to the Commissioner.  Upon final disposition, the report shall be maintained by the Commissioner/designee.

19.  <u>Emergency Circumstances</u>. Nothing in this Directive shall prevent the highest ranking custody supervisor from taking immediate, reasonable action when circumstances require. Nothing in this Directive shall prevent an employee from taking immediate, reasonable action to protect self or others.

20.  <u>Exceptions</u>.  Any exception to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.




OOC 6.11-1
REV 5-97

# STATE of CONNECTICUT
## DEPARTMENT of CORRECTION
### CANINE UNIT

## BITE REPORT

IR# 00 11018

| HANDLER | Schibi | | CANINE | Rex | | | |
|---|---|---|---|---|---|---|---|
| FACILITY | Northern CI | | DATE | 11/3/2000 | TIME | 9:15 | ☒ AM ☐ PM |
| BITE WAS : | ☒ ON COMMAND | ☐ PROVOKED | | ☐ UNPROVOKED | | ☐ ACCIDENTAL | |
| ATTACHED REPORTS: | ☒ INCIDENT REPORT | | | ☒ DISCIPLINARY REPORT | | | |
| | ☐ USE of CHEMICAL AGENT | ☒ USE of FORCE | | | ☐ MEDICAL INCIDENT REPORT | | |

### INMATE INJURIES

| NAME | Atkinson, Eric | | NUMBER | 214214 | TYPE | |
|---|---|---|---|---|---|---|
| MEDICAL TREATMENT BY/AT: | | Northern CI Medical Staff | | | | |
| NAME | | | NUMBER | | TYPE | |
| MEDICAL TREATMENT BY/AT: | | | | | | |
| NAME | | | NUMBER | | TYPE | |
| MEDICAL TREATMENT BY/AT: | | | | | | |

### CIRCUMSTANCES LEADING TO THE BITE

At approximately 9:15 am I entered 1 West Cell #119 along with K-9 rex, I gave Inmate Atkinson 214214 several direct orders to come down off his desk, and go to the prone position. He failed to comply, while becoming combative and more aggressive towards this officer. At this time I deployed K-9 Rex, K-9 Rex reacted as trained biting Inmate Atkinson in the right thigh area.

### STAFF INJURIES

| NAME | | RANK | | TYPE | | |
|---|---|---|---|---|---|---|
| MEDICAL TREATMENT BY: | | | | | | |
| NAME | | RANK | | TYPE | | |
| MEDICAL TREATMENT BY: | | | | | | |

### CONTACTS

| | | DATE | | TIME | | ☐ AM ☐ PM |
|---|---|---|---|---|---|---|
| ☐ UNIT ADMINISTRATOR | | DATE | | TIME | | |
| ☒ CANINE UNIT ADMINISTRATOR | Capt. David Carroll | DATE | 11/3/100 | TIME | 9:15 | ☒ AM ☐ PM |

11/3/2000

# Incident Report - Page 16

**Connecticut Department of Correction**

**EXHIBIT 6**

| Individual Summary | | | |
|---|---|---|---|
| it  Northern CI | Report No. OCI1018 | | Report Date 11/03/00 |
| pared By ▮▮ Schibi | Title OFFICER | | Signature ▮▮ |
| ident Class 1☐ 1A☐ 2☑ 3☐ | Type "F" | Time 9:15  ☒ A.M.  ☐ P.M. | Date 11/3/00 |

11/3/00, Inmate Atkinson, Eric #214214 of One West cell #119 refused to close his trap door ring chow. He became combative, and aggressive towards staff and refused all verbal rection. At this time a cell extraction team was suited up. At approximately 9:15 am Inmate kinson was given several more direct orders from the cell extraction supervisor. He did not mply, at which time the cell extraction supervisor deployed chemical agent. Inmate Atkisnon ntinued to be non compliant. He became more combative, at this point I entered the cell with Rex. I gave Inmate Atkinson several more direct orders to comply, he did not, he became re aggressive towards this officer and attempted to assault my K9 partner by kicking him in e head. At this time K9 Rex was given the command "get him", K9 Rex reacted as trained ting Inmate Atkinson in the right upper thigh area. I then physically directed Inmate kinson to the prone position. This allowed the cell extraction team to control and restrain mate Atkinson without further injury to himself or any staff members.

11/3/2000

EXHIBIT 5

# Incident Report – Page 5

☐ Individual

☒ Summary                    Connecticut Department of Correction

| Unit | NORTHERN C.I. | Report # | CC11018 | | Report Date | 11/3/00 |
| Prepared by | ZACHAREWICZ | Title | CAPTAIN | | Signature | |
| Incident Class | 1 ☐  1a ☐  2 ☐  3 ☒  ☐ | Type  F | Time  9:25 | ☒ A.M.  ☐ P.M. | Date  11/3/00 | |

Staff and a supervisor responded to cell 119 due to the fact that inmate Actkinson # had refused to allow staff to secure the serving slot trap to the door of his assigned cell. Staff and a supervisor utilized I.P.C. skills and issued several direct orders to the inmate however compliance was not achieved. LT. Oglesby then summonds an extraction team to gain compliance from the inmate and relocate the inmate to another cell. An extraction team along with a K-9 officer arrived at the scene of the incident. At that time direct orders were again issued. The supervisor on site then deployed a couple of bursts of chemical agent into the cell. The chemical agent had little effect on the inmate due to the fact that it was nearly impossible to achieve direct contact with the agent onto the inmate. Moments later the cell door was opened and the K-9 officer entered the cell with his dog. Following a brief struggle, the inmate was eventually brought to the floor where the extraction team covered down and applied the restraints. The inmate was removed from the cell and decontaminated. He was then treated for exposure to chemical agent and also an injury caused by a dog bite. The inmate was strip searched and placed into stationary 4-point restraints pending serious improvement of his poor behavior. The Warden, and the Majors were notified about the incident. A review of the incident indicates the following:

No staff were injured throughout the incident.

The inmate received minor injuries due to the dog bite.

The extraction team and the K-9 officer applied only the necessary amount of force required to take control of the inmate and gain compliance.

All force used was authorized and in accordance with the directive 6.5.

The inmates actions warranted a disciplinary report and placement into 4-point restraints.

Medical staff treated the inmate.

The duty officer was informed. MwZ



# Disciplinary Report - Page 1
## Connecticut Department of Correction

EXHIBIT 3

| Unit Northern C.I | Report date 11/3/2000 | Report no. |
|---|---|---|
| Inmate name Atkinson Eric | I.D. no. 214214 | Housing 1 West Cell 119 |
| Location 1 West Cell 119 | Incident date 11/3/2000 | Time 9:00 [X] a.m. [ ] p.m. |
| Charge Disobeying a direct order | | Class B |

**Description of violation:** This officer gave inmate Atkinson Eric 214214 several direct orders to get down off his desk and go to the prone position. He refused all lawful direction, then he took a combative aggressive stance.

**Witness(es):**

**Physical evidence:** Tape (video)

| Reporting employee Kevin Schibi | Employee requests copy [X] yes [ ] no |
|---|---|
| Title C/O | Date 11/3/2000 | Time 9:15 [X] a.m. [ ] p.m. |

## CUSTODY SUPERVISOR/UNIT MANAGER REVIEW

| [ ] Administrative detention | Date | Time [ ] a.m. [ ] p.m. |
|---|---|---|
| [ ] Interview accused | Informal disposition | |

Custody supervisor/unit manager signature

| Title Lieutenant | Date Nov 3, 2000 | Time 3:21 [ ] a.m. [v] p.m. |

## INMATE NOTICE

| Delivered by | |
|---|---|
| Title C/O | Date 11-3-00 | Time 4:30 [ ] a.m. [ ] p.m. |

EXHIBIT #1

# Medical·Incident Report
## Connecticut Department of Correction

CN6602
Rev. 4-12-93

| Facility | Northern CI | | Report Date | 11/3/w |
|---|---|---|---|---|
| Inmate Name | Atkinson Eric | | Time | 10 ☐ a.m. ☐ p.m. |
| Staff Name | S. Katz-Feinberg APRN | | I.D. no. | 214214 |

| Incident report submitted : | ✓ Yes ☐ No | Number | | Date | 11/3/w |
|---|---|---|---|---|---|

**Treatment location:** (R) thigh - medial and posterior.

**Injury Description (must be completed if no other report):**
2 - 3 cm full thickness lacerations and 3 - 1 cm full thickness lacerations requiring suturing. In addition - many large and small abrasions and shallow lacerations.

**Diagnosis:** lacerations to (R) thigh 2° Dog Bites.

**Treatment administered:** 11 sutures and 3 - steri-strips applied to wounds under sterile technique c̄ assistance of nursing and Cozy while I m 4 pointed. 0.5 ml Tetanus Toxoid to (L) Deltoid -- Keflex 500 mg po BID X 10 d (R) Motrin 800 p.o. X 5 d

**Required follow up:** Suture Removal in 10 days -- no shower for one week.

**Placement after treatment:** Remains in cell

**Observations/remarks:** Observe for infection

| Patient signature | | Date | |
|---|---|---|---|
| Medical staff signature | S. Katz-Feinberg APRN | Date | 11/3/w |
| Custody staff signature | | Date | |

EXHIBIT 2



# Disciplinary Report - Page 1
## Connecticut Department of Correction

CN 95
1-10

IR# 0011018

| Unit | N.C.I | Report date 11-03-00 | Report no. |
|---|---|---|---|
| Inmate name | Atkinson, Eric | I.D. no. 214214 | Housing 1w- 119 |
| Location | 1west 119 | Incident Date 11-03-00 | Time 8¹⁵ ☒ a.m. ☐ p.m |
| Charge Interfering with Safety or Security | | | Class A. |

**Description of violation:** On the above date & time while Conducting trash pickup Inmate Atkinson, Eric 214214 placed his arm out food trap not letting this Officer resecure food trap. This action interfered with the Safety and Security of the Unit.

**Witness(es):**

**Physical evidence:**

| Reporting employee _(signature)_ | | Employee requests copy ☐ yes ☐ no | |
|---|---|---|---|
| Title C/O | Date 11-03-00 | Time 10⁰⁰ ☒ a.m. ☐ p.m. | |

## CUSTODY SUPERVISOR / UNIT MANAGER REVIEW

| ☐ Administrative detention | Date | Time ☐ a.m. ☐ p.m. |
|---|---|---|
| ☐ Interview accused | ☐ Informal Disposition | |
| Custody supervisor / unit manager signature Carroll | | |
| Title Lt. | Date 11/3/2000 | Time 11⁰⁰ ☒ a.m. ☐ p.m. |

## INMATE NOTICE

red by _(signature)_