UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERIC ATKINSON | : | PRISONER |
| | : | NO. 3:01CV1971(PCD) |
| VS. | : | |
| | : | |
| KEVIN SCHIBI, ET AL. | : | MARCH 19, 2004 |

### MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The plaintiff, a pro se inmate at Northern Correctional Institution (hereinafter "Northern") has filed a Motion for Summary Judgment in the above-captioned matter in which he alleges the use of excessive force in the course of a cell extraction. The plaintiff seems to argue that because he was passively sticking his arm out of a trap door and force was ultimately used on him to extract him from a cell, the force used was excessive. As both the plaintiff's and the defendants' exhibits demonstrate, however, the plaintiff refused to follow direct orders for several days running, and, despite his allegations, was combative with correctional officials, leaving them no choice but to use the force that is undisputed in this matter. The defendants respectfully submit that, as a matter of law, genuine issues of material fact exist that preclude summary judgment in this matter.

I.     **FACTS**

The incident which is the subject of this lawsuit occurred on November 3, 2000. See Pf.'s Declaration in Support of Motion for Summary Judgment, ¶ 2; **Ex. A, Incident Report Package 11/3/00.** Three days earlier, on October 31, 2000, the plaintiff, an inmate at Northern Correctional Institution (hereinafter "Northern"), "held his trap hostage", meaning that while in his cell he extended his arm through the trap door in his cell and refused lawful orders to allow the trap to be secure. **Ex. B, Incident Report Package 11/1/00, Report by Lt. Knapp.** Northern is the correctional facility with the highest security rating in the State of Connecticut Department of Correction. **Ex. D, Oglesby Aff.** On that date, October 31, 2000, the plaintiff expressed that he "did not like the assigned unit support staff and wanted to be moved to 1 East." **Ex. B, Knapp.** On that date, "the unit manager addressed [the plaintiff's] concern and was able to secure the trap with no incident." **Ex. B, Knapp.**

Two days prior to the incident which is the subject of this lawsuit, on November 1, 2000, the plaintiff again "held his trap hostage." **Ex. B.** On this date, the issues were not resolved to the plaintiff's liking, as they had been on the day before. **Ex. B.** Correctional staff did attempt "verbal I.P.C. [inter-personal communication] skills to gain compliance [but] were unable to do so." **Ex. B, Report by Zacharewicz**. The plaintiff's issue again on this date was that he wanted to be housed in a different cell. **Ex. B, Zacharewicz.** The plaintiff was given several direct

orders to remove his hand from the trap. **Ex. B, Knapp.** Lt. Knapp informed the plaintiff of his "intent to utilize force to gain compliance and ensure the safety of the unit and staff assigned. Inmate Atkinson was informed that this would include the use of chemical agent and K-9 if needed." **Ex. B, Knapp.** When the plaintiff's "request was not honored . . . the inmate became very belligerent and hostile." **Ex. B, Zacharewicz.** The following then occurred, as described in the Incident Report:

> An extraction team was assembled and dispatched to the scene. The supervisor on site applied chemical agent however it had little or no effect on the inmate. Shortly after the issuance of the direct orders and following the application of the chemical agent the cell extraction team entered the cell and restrained the inmate.

**Ex. B, Zacharewicz.**

Restraining the plaintiff on that date was difficult. **Ex. B, Zacharewicz.** "Inmate Atkinson resisted the extraction team and attempted to charge towards the team members and out of the cell." **Ex. B, Zacharewicz.** The extraction team consisted of 7 Correctional Officers, one with a K-9, as well as a supervisor and staff to video tape in addition. **Ex. B, Knapp.** Besides charging the team, the plaintiff struggled as he was restrained. **Ex. B, Knapp.** The plaintiff attempted to bite the hand of one of the officers restraining him and the officer was compelled to strike the plaintiff twice in order to get him to stop. **Ex. B, Knapp.** Even after staff secured the plaintiff, he continued to yell at staff members. **Ex. B, Knapp.** The plaintiff did not include in this action allegations regarding the use of force on November 1, 2000.

The incident on November 1, 2000, disrupted the normal activities within the unit. **Ex. B, Report by Serrazina.** Another inmate complained that the chemical agent spray used in an attempt to control the plaintiff caused him problems with his asthma. **Ex. B, Report by Pelchat.**

One Correctional Officer reported tightness in his back following the incident on November 1, 2000, but no further injuries to staff or to the plaintiff occurred. **Ex. B.** The plaintiff was decontaminated and the restraints initially used were replaced with soft 4 point restraints as a result of the incident. **Ex. B.** Four point restraint status is when an inmate is secured back-down on a bed for some period of time and his limbs are restrained and attached to the bed. **Ex. D, Oglesby Aff.** The restraints can be soft or hard, that is, metal. **Ex. D.** It is procedure for medical staff to check the inmate after the initial placement in restraints and periodically thereafter. **Ex. D.** This procedure was followed in this case. **Ex. B.**

Staff involved in the incident wrote reports regarding their involvement. **Ex. B.** The K-9 officer reported on November 1, 2000 that the other members of the extraction team were able to control the plaintiff and so use of the K-9 on November 1, 2000 was unnecessary. **Ex. B, Serrazina.**

This incident occurred at approximately 11:40 am on November 1, 2000. **Ex. B.** The incident involved some of the same men that are defendants in this action, namely, Officer

Wilbur Strozier, Officer Wilbur Farley, who hurt his back, Felix Graziano, and Captain Zacharewicz.  **Ex. B.**  Two other defendants in this action were contacted about the incident on November 1, 2000, namely Major Lajoie and Warden Myers.  **Ex. B, Serious Incident Summary Report**.  When Warden Myers reviewed the November 1, 2000 incident on November 2, 2000, he commented on the report, "This inmate is very dangerous.  He is seen clearly on tape refusing all lawful orders.  Even after the use of Capstun he is still noncompliant.  All actions were justified.  Furthermore the video shows the entire action in this incident.  He shall be reviewed within 24 hours for removal."  **Ex. B.**

Following the November 1, 2000 incident, the plaintiff was placed on in cell restraint status and monitored every 15 minutes.  **Ex. B.**  On November 2, 2000, the plaintiff was released from full stationery restraints as he was compliant.  **Ex. C, Nov. 2, 2000 Incident Report.**  He was released without incident and given all allowable property and linen items.  **Ex. C.**

The plaintiff was given a Disciplinary Report for his behavior on November 1, 2000.  **Ex. F, 11/1/00 DR.**  The charge was Interfering with Safety and Security.  **Ex. F.**

Within 24 hours of being released from restraint status, on November 3, 2000, the plaintiff once again became non-compliant, refusing to remove his arm from the trap door to his cell and demanding to see supervisory personnel, thus precipitating the incident that is the

subject of this lawsuit.  **Ex. A, Report by Melbourne.**  The defendant Lt. Oglesby[1] reported to Atkinson's cell door.  **Exs. A, Report by Oglesby; D.**  Oglesby gave the plaintiff a direct order to place his hand inside the slot and he refused, stating that "he wanted see the Majors and to get the [extraction] team down to the unit because that was the only way the food slot was going to get closed."  **Exs. A, Oglesby; D.**  Lt. Oglesby then summoned another supervisor, Captain Faneuff, who likewise attempted to de-escalate the situation with the plaintiff and was likewise unsuccessful.  **Exs. A, Oglesby; D.**

As per Department of Correction (hereinafter "DOC") policy, an extraction team was assembled.  **Exs A, Oglesby; D.**  The team included 7 Correctional Officers as well as one Correctional Officer with a K-9.  **Exs. A, Oglesby; D.**  The team was briefed that the plaintiff had an assaultive history.  **Exs. A, Oglesby; D;  G, Disciplinary History.**[2]  Also, Lt. Oglesby informed his team that the plaintiff had a history of previous cell extractions, and that during those extractions the plaintiff typically attempted to rush onto the tier, so the team was instructed

---

[1]   Oglesby was promoted, and is now a captain.  **Ex. D.**  He is sometimes referred to as Lt. Oglesby as that was his rank on the day in question.

[2]   **Exhibit G,** the plaintiff's Disciplinary Report history, indicates a total of 209 infractions total, including 11 Assaults on DOC personnel, 9 of which occurred before this incident, 3 Attempted Assaults on DOC personnel before this incident, and 33 Threats, 25 of which occurred before this incident.  **Ex. G.**

to allow the inmate to come onto the tier prior to being escorted to the prone position if necessary.  **Exs. A, Oglesby; D.**  The team was supervised by Lt. Oglesby.  **Ex. D.**

When the team returned to the plaintiff's cell, the plaintiff was more actively resisting than before, having placed a mattress against the door and thus obstructing attempts by correctional staff to spray chemical agent into the cell.  **Exs. A, Oglesby; D.**  Oglesby gave more orders to the plaintiff to turn around and place his hands in position to be handcuffed, which went unheeded.  **Exs. A, Oglesby; D.**  Lt. Oglesby also informed the plaintiff, as he had done previously, that failure to comply with the lawful orders of staff would result in the use of force, including chemical agent and the use of K-9.  **Exs. A, Oglesby; D.**  Lt. Oglesby had Correctional Officer Strozier use a "push bar" to move the mattress away from the door, but the plaintiff was actively combative, pushing the mattress back against the door multiple times.  **Exs. A, Oglesby; D.**  After several attempts to have the plaintiff take down the mattress, Lt. Oglesby turned the cell extraction over to the K-9 handler, Schibi.  **Exs. A, Oglesby; D.**

The K-9 handler also gave the plaintiff multiple orders to comply, and the plaintiff continued to refuse.  **Exs. A, Oglesby; D.**  The door to the cell was opened both electronically and with the assistance of Lt. Oglesby.  **Exs. A, Oglesby; D.**  Rather than putting his hands out to be handcuffed in the face of the K-9 handler and the extraction team, the plaintiff jumped on a desk in the cell and told the dog handler to "come on" despite being sprayed with chemical agent

at the same time. **Exs. A, Oglesby; D.** The chemical agent had no effect on the plaintiff. **Exs. A, Oglesby; D.** The dog then bit the plaintiff, getting him to the ground. **Exs. A, Oglesby; D.** The team then entered the cell to secure the inmate, with the members of the team being assigned to secure certain parts of the plaintiff to maximize the safety of both staff and the inmate. **Exs. A, Oglesby; D.** Once the plaintiff was prone, the dog was ordered back and the correctional team secured the inmate. **Exs. A, Oglesby; D.**

Given the plaintiff's own behavior and refusal over the course of several days to comply with the lawful orders of correctional personnel, the use of force on the plaintiff was lawful and appropriate to the circumstances. **Ex. A.**

## II. ARGUMENT

### A. STANDARD

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute that preclude judgment in the movant's favor, and that the movant is entitled to judgment as a matter of law. *See* Rule 56(c), Fed. R. Civ. P.; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986)). A Court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue." *Miner v. Glen Falls*, 999 F.2d 655, 661 (2d Cir. 1993). When, as in this case, "the moving party will bear the burden

of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 331 (1986) (Brennan, J., dissenting on other grounds). "Summary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie,* 119 S.Ct. 1545, 1552 (1999). "[I]t remains the case that at summary judgment, all factual inferences must be resolved in favor of the nonmovant." *Danzer v. Norden Systems, Inc.,* 151 F.3d 50, 54 (1998). In order to be considered in support of a Motion for Summary Judgment, the facts contained in material submitted to a court must be admissible or usable at trial. *Celotex,* 477 at 324.

Summary judgment in plaintiff's favor is inappropriate in this matter. The plaintiff claims in his "Declaration" that he was beaten, when in fact, the defendants dispute that. The defendants maintain that the amount of force used was proper. The plaintiff also claims that he did not threaten anyone, and omits from the sequence of events he relates that he had a mattress against his cell door in a combative stance and had repeatedly refused all direct orders to cooperate with staff.

Given this basic disagreement regarding the facts of this case and the plaintiff's behavior resulting in the use of force, summary judgment is inappropriate in this matter.

DEFENDANTS,
Kevin Schibi, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY: /s/_____
Lynn D. Wittenbrink
Assistant Attorney General
Federal Bar No. ct08575
110 Sherman Street
Hartford, CT  06105
Telephone No.: (860) 808-5450
Fax No.: (860) 808-5591
lynn.wittenbrink@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid to the following on this 19th day of March 2004:

Eric Atkinson, Inmate No. 214214
Northern Correctional Institution
287 Bilton Road, PO Box 665
Somers, CT  06071

/s/_____
Lynn D. Wittenbrink
Assistant Attorney General